## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ROBERT BAKER III,**

*Plaintiff,*

Case No.: 8:24-cv-434

v.

**EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., FAIR ISAAC CORPORATION,** *and* **TRANS UNION LLC,**

*Defendants.*

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Robert Baker III ("Plaintiff" or "Mr. Baker"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Fair Isaac Corporation ("Fair Isaac"), and Trans Union LLC ("Trans Union") (collectively, the "Defendants"), stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("FCRA") by Equifax, Experian and Trans Union, and for Defamation by FICO.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for Plaintiff's FCRA claims arises under 28 U.S.C. § 1331, as the FCRA is a federal statute.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4.      The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

5.      Venue is proper in the Middle District of Florida because the acts complained of were committed and/or caused by the Defendants in Polk County, which is within the Middle District of Florida.

## PARTIES

6.      **Mr. Baker** is a natural person residing in the City of Auburndale, Polk County, Florida.

7.      Mr. Baker is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.      **Equifax** is a Georgia limited liability company with a principal business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

9.      Equifax is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

10.   **Experian** is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

11.   Experian is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation Service, 1200 South Pine Island Rd., Plantation, FL 33324.

12.   **Trans Union** is a Delaware limited liability company with a principal business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

13.   Trans Union is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

14.   Equifax, Experian, and Trans Union are each a "consumer reporting agency" ("CRA") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, and/or on a cooperative nonprofit basis, they regularly engage, in whole or in part, in the practice of assembling or evaluating consumer credit information, or other information on consumers, for the purpose of furnishing consumer reports to third parties, and use means or facilities of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.

15.   **Fair Isaac** is a Delaware corporation with a principal business address of 5 West Mendenhall, Ste 105, Bozeman, MT 59715.

16.     Fair Isaac is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 121 Hays St., Tallahassee, FL 32301.

## GENERAL ALLEGATIONS

17.     Fair Isaac is a data analytics company which, for all intents and purposes, created the first widely-used, general purpose credit score in the United States, in 1989.

18.     Since 1989, Fair Isaac's FICO® scores have become almost synonymous with the words "credit score," similar to how "Kleenex®" is commonly used to refer to any brand of tissue.

19.     The 300 to 850 score range utilized in many FICO® score versions is essentially the base of reference in most American's minds in terms of how a credit score evaluates a consumer. (Certain "industry specific" FICO® scores range from 250 to 900, whereas general-purpose scores range 300-850.)

20.     Equifax, Experian, and Trans Union all have agreements with Fair Isaac in which they license or purchase Fair Isaac's technology and scores and incorporate them into reports sold to lenders and creditors, since the vast majority of creditors want to be able to obtain a consumer's report as well as a FICO® score in a single transaction.

21.     Equifax, Experian, and Trans Union each charge their customers for FICO® scores and retain at least a portion of that revenue for themselves.

22.     When a credit score is utilized, a CRA must later disclose to the consumer what the consumer's score was computed as, the range of possible scores, and the four largest key factors as to why the score was not higher. *See, e.g.*, 1681g(f)(2)(B).

23.     In most cases, the lender purchasing the report about a consumer sees essentially the same data later disclosed to the consumer – the consumer's FICO score and the four largest key factors in why the score was not higher.

## CRAs and Fair Isaac Falsely Claim Mr. Baker Has No Credit Card History

24.     Since at least June 2016, Mr. Baker has been an authorized user on his parent's American Express charge account, which was opened in April 1985. **SEE PLAINTIFF'S EXHIBIT A.**

25.     Since June 2016, American Express has furnished information regarding this account to Equifax, Experian and Trans Union, indicating the payment history, balance, high balance, and other data concerning the account Mr. Baker is an authorized user of.

26.     Mr. Baker has an American Express card issued in his name, and frequently makes purchases with it, and also makes payments on the account.

27.    Experian considers the American Express account to be a form of credit relating to Mr. Baker, even noting that Mr. Baker, born in 1992, has credit history older than he is, noting on his consumer disclosure "The Social Security number that you gave us when you contacted us shows that credit was established before the number was issued."

28.    Mr. Baker is also an authorized user on a Lowes consumer charge card, issued by Synchrony Bank, and has been since the account was opened in July 2022. *Id.*

29.    The Lowes and American Express accounts are both "revolving" credit lines, e.g., they are open-ended accounts with a credit limit that can be utilized, repaid, and then used again.

30.    Thus, objectively, and empirically, Mr. Baker has two revolving credit lines contained in his report.

31.    Certain versions of FICO® scores pick up on this – Mr. Baker's "mortgage" credit scores – Equifax Beacon 5.0, Experian Model 2, and Trans Union Classic 04 – showed scores of 684, 669, and 678, respectively, based on credit reports obtained from the three CRAs on April 14, 2023. **SEE PLAINTIFF'S EXHIBIT B.**

32.    None of these scores reported that a lack of revolving account or credit card account impacted Mr. Baker's scores, meaning these scoring models viewed

Mr. Baker's credit card history as sufficient and did not adversely impact his credit score.

33.     Yet, when Fair Isaac scored Mr. Baker's report using its "Auto Score 10" model – the newest FICO® score customized for the automotive lending industry in 2020 and already widely adopted by it – his Equifax score was 528, well within the "poor" range. **SEE PLAINTIFF'S EXHIBIT C.**

34.     Mr. Baker's second largest key factor was "Lack or recent revolving information," with his fourth key factor "Lack of recent credit card information." ***Id.***

35.     Thus, when Equifax uses Fair Isaac's Beacon 5.0 model, Mr. Baker has credit card history. Yet, when Equifax uses Fair Isaac's Auto Score 10, to analyze the exact same report, Mr. Baker suddenly has no credit card history at all, resulting in substantially lower scores --- a 156-point difference.

36.     Mr. Baker's Equifax Auto Score 9, which was also calculated from the same April 14, 2023 Equifax data, shows a score of 600 – at the very bottom of the "fair" category. **SEE PLAINTIFF'S EXHIBIT D.**

37.     A "Lack of recent revolving information" was Mr. Baker's second-highest key factor in why his score was not higher, and 84 points below his Beacon 5.0 score, which considered him to have credit card history.

38.     Mr. Baker's Experian Auto 10 score was 539, with his second key factor a "Lack of recent revolving information" and his third a "Lack of recent credit card information."

39.     Mr. Baker's Trans Union Auto 10 score was 582, with his third key factor a "Lack of recent revolving information" and his second a "Lack of recent credit card information."

40.     From January 1, 2023 through September 13, 2023, Mr. Baker diligently searched for an auto loan.

41.     Experian sold at least 10 reports to auto lenders including Ally Financial, Chase Auto, Mid Florida Credit Union, and Ed Morse Cadillac in April and May 2023.

42.     Upon information and belief, Experian provided FICO Automotive 9 or FICO Automotive 10 scores with each report.[1]

43.     In each of these reports, Experian and Fair Isaac stated that Mr. Baker lacked revolving credit information – a demonstrably false statement.

44.     Equifax and Trans Union also sold multiple reports to automotive lenders to which Mr. Baker had applied for financing around this same time.

---

[1] The actual credit reports pulled by lenders are often not provided to the consumer by the potential creditor; however, such information is maintained by the end-user and can be obtained by Plaintiff in discovery.

45.     For example, Mr. Baker applied for an auto loan with GM Financial in July 2023.

46.     To evaluate Mr. Baker's application, GM Financial obtained a consumer report with an automotive-enhanced FICO score from Equifax.

47.     The FICO score provided by Fair Isaac to Equifax excluded Mr. Baker's American Express and Lowe's accounts from its computation.

48.     The FICO score provided by Fair Isaac was part of the consumer report on Mr. Baker Equifax furnished and sold to GM Financial.

49.     Equifax's consumer report on Mr. Baker included tradelines concerning the American Express and Lowe's accounts.

50.     As a result, Equifax provided a consumer report which falsely indicated a "lack of recent revolving account information," while simultaneously indicating that Mr. Baker had two revolving credit accounts with recent use.

51.     As a result of Equifax and FICO's conduct, Mr. Baker's application for an auto loan was denied. **SEE PLAINTIFF'S EXHIBIT E.**

52.     Equifax sold at least 13 other consumer reports regarding Mr. Baker to prospective auto lenders, from January 1, 2023 through September 13, 2023.

53.     Trans Union sold 11 consumer reports regarding Mr. Baker from January 1, 2023 through September 13, 2023.

54.    Each of these reports included a FICO Automotive 9 or FICO Automotive 10 score provided to Trans Union or Equifax by Fair Isaac.

55.    Each report sold by Trans Union or Equifax stated that Mr. Baker lacked revolving credit information – a false statement.

56.    As a result, Mr. Baker was denied financing from each prospective lender.

57.    Revolving credit history – which Fair Isaac deems to include "bank" revolving credit like American Express, Mastercard, and Visa, as well as "non-bank" revolving credit (usually retail credit) such as Lowes, Home Depot, or Macys – makes up roughly 35% of a consumer credit score evaluation.

58.    Thus, the absence of any revolving information of any kind inherently produces a much lower score for almost any consumer, since the 35% of the consumer's score which is based on revolving credit history and usage cannot be evaluated.

59.    Worse, at least in the case of Mr. Baker, is that another 15% of a FICO score is based on the length of time accounts have been established, sometimes referred to as "average age of accounts" ("AAOA").

60.    The failure to incorporate the decades of history the American Express account had thus also caused Mr. Baker's score to be computed lower, since his AAOA, *sans*-American Express, is much lower than his AAOA when including it.

61.     In sum, the failure of Fair Isaac to include information clearly on Mr. Baker's report in its score calculations caused his FICO Automotive 9 and FICO Automotive 10 to be more than 100 points lower than they would have been, had the American Express and Lowes accounts have been factored in; likewise, the inclusion of these scores, which Fair Issac stated ostensibly factual, albeit clearly false, reasons for, was highly unreasonable.

62.     Intentionally including information which references a consumer having "no recent revolving activity," when his report clearly and conspicuously shows decades of it, is an unreasonable procedure to assure maximum possible accuracy.

63.     On information and belief, Fair Isaac frequently excludes authorized user tradelines from its score computations because it inherently assumes that their presence is simply credit "piggybacking" in which the authorized user tradeline is added only for the purpose of inflating a consumer's credit score.

64.     Even if true in certain circumstances, many consumers, like Mr. Baker, have credit reports with authorized user tradelines appearing because they are active users of the account, making charges and payments, often for years.[2]

---

[2] Exclusion of authorized user accounts from credit score computation could potentially run afoul of federal law. The Federal Reserve's Regulation B, which implements the 1974 Equal Credit Opportunity Act, requires information on spousal authorized user accounts be reported to the credit bureaus and considered when lenders evaluate credit history in many circumstances.

65.     Commercial speech, like an opinion of a consumer's credit, is less-protected by the First Amendment than other forms of speech. *Central Hudson Gas & Elec. v. Public Svc. Comm'n*, 447 U.S. 557 (1980).

66.     Neither the CRAs nor Fair Isaac disclosed anywhere in their reports to lenders containing Mr. Baker's FICO Automotive 9 or FICO Automotive 10 scores that its statement that Mr. Baker had no revolving credit history *excluded* authorized user accounts appearing on his report – something the CRAs and Fair Isaac could have easily done with virtually no cost or effort.

67.     None of the CRAs, for their part, had systems in place to spot the clearly obvious anomalies between the presence of multiple revolving tradelines on a report – actively-reported – and Fair Isaac's statements that "no" revolving credit history existed.

68.     The CRAs simply copy-and-pasted data from Fair Isaac, verbatim, without any examination of if the information it was selling under their names—all of which hold considerable gravitas in the lending world—could even possibly be true.

69.     The CRAs are required to use reasonable procedures to ensure the maximum possible accuracy of consumer reports.

70.     Failure to flag information which is directly and obviously contradicted by other information *on the same report* is inherently unreasonable.

71.    In each report mentioned herein, Fair Isaac stated that Mr. Baker's credit score was "poor" due to a lack of recent revolving account history.

72.    These statements by Fair Isaac were false, and were known to be false by Fair Isaac, as its other scores were fully capable of factoring in Mr. Baker's American Express and Lowes accounts.

73.    The Defendants' conduct has caused Mr. Baker to suffer severe emotional distress and spend significant time and money forcing the Defendants to comply with their statutory obligations and finding and engaging counsel.

74.    Mr. Baker has also suffered severe embarrassment at having to repeatedly explain himself to lenders when applying for a loan he should have qualified for.

75.    Mr. Baker has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

**COUNT I**
**EXPERIAN'S WILLFUL VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681e(b)**

76.    Mr. Baker adopts and incorporates paragraphs 1 – 75 as if fully stated herein.

77.    Experian violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as Experian's procedures resulted in the inclusion of FICO 9 and FICO 10

Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

78.    Experian's conduct was willful and intentional, or, alternately, Experian acted with reckless disregard for its duties under the FCRA to ensure the maximum possible accuracy of consumer reports sold.

79.    Experian is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Baker's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Baker respectfully requests this Honorable Court enter judgment against Experian for:

a.    The greater of Mr. Baker's actual damages and statutory damages of $1,000 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT II
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

### *Pled in the Alternative to Count I*

80.   Mr. Baker adopts and incorporates paragraphs 1 – 75 as if fully stated herein.

81.   Experian violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as Experian's procedures resulted in the inclusion of FICO 9 and FICO 10 Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

82.   Experian owed Mr. Baker a legal duty to utilize reasonable procedures to assure the accuracy of his consumer reports.

83.   Experian breached this duty when its procedures resulted in the inclusion of FICO 9 and FICO 10 Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

84.   Experian thus acted negligently, and as a result, Experian is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Baker's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Baker respectfully requests this Honorable Court enter judgment against Experian for:

a.   Mr. Baker's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C.

§ 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT III
## EQUIFAX'S WILLFUL VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681e(b)

85.    Mr. Baker adopts and incorporates paragraphs 1 – 75 as if fully stated

herein.

86.    Equifax violated 15 U.S.C. § 1681e(b) when it failed to follow

reasonable procedures to assure maximum possible accuracy of a consumer report,

as Equifax's procedures resulted in the inclusion of FICO 9 and FICO 10

Automotive scores and the comment "lack of recent revolving account information,"

or similar, which was false, as Mr. Baker had at least two revolving accounts with

recent account activity on his reports.

87.    Equifax's conduct was willful and intentional, or, alternately, Equifax

acted with reckless disregard for its duties under the FCRA to ensure the maximum

possible accuracy of consumer reports sold.

88.    Equifax is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of

Mr. Baker's actual damages and statutory damages of up to $1,000 for *each*

*occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Baker respectfully requests this Honorable Court enter judgment against Equifax for:

a.   The greater of Mr. Baker's actual damages and statutory damages of $1,000 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

**COUNT IV**
**EQUIFAX'S NEGLIGENT VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681e(b)**

***Pled in the Alternative to Count III***

89.   Mr. Baker adopts and incorporates paragraphs 1 – 75 as if fully stated herein.

90.   Equifax violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as Equifax's procedures resulted in the inclusion of FICO 9 and FICO 10 Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

91.     Equifax owed Mr. Baker a legal duty to utilize reasonable procedures to assure the accuracy of his consumer reports.

92.     Equifax breached this duty when its procedures resulted in the inclusion of FICO 9 and FICO 10 Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

93.     Equifax thus acted negligently, and as a result, Equifax is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Baker's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Baker respectfully requests this Honorable Court enter judgment against Equifax for:

a.      Mr. Baker's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.      Such other relief that this Court deems just and proper.

**COUNT V**
**TRANS UNION'S WILLFUL VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681e(b)**

94.     Mr. Baker adopts and incorporates paragraphs 1 – 75 as if fully stated herein.

95.     Trans Union violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as Trans Union's procedures resulted in the inclusion of FICO 9 and FICO 10 Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

96.     Trans Union's conduct was willful and intentional, or, alternately, Trans Union acted with reckless disregard for its duties under the FCRA to ensure the maximum possible accuracy of consumer reports sold.

97.     Trans Union is thus liable, pursuant to 15 U.S.C. § 1681n, for the greater of Mr. Baker's actual damages and statutory damages of up to $1,000 for *each occurrence*, plus punitive damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Baker respectfully requests this Honorable Court enter judgment against Trans Union for:

a.     The greater of Mr. Baker's actual damages and statutory damages of $1,000 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.     Such other relief that this Court deems just and proper.

## COUNT VI
## TRANS UNION'S NEGLIGENT VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681e(b)

### *Pled in the Alternative to Count V*

98.    Mr. Baker adopts and incorporates paragraphs 1 – 75 as if fully stated herein.

99.    Trans Union violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of a consumer report, as Trans Union's procedures resulted in the inclusion of FICO 9 and FICO 10 Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

100.    Trans Union owed Mr. Baker a legal duty to utilize reasonable procedures to assure the accuracy of his consumer reports.

101.    Trans Union breached this duty when its procedures resulted in the inclusion of FICO 9 and FICO 10 Automotive scores and the comment "lack of recent revolving account information," or similar, which was false, as Mr. Baker had at least two revolving accounts with recent account activity on his reports.

102.    Trans Union thus acted negligently, and as a result, Trans Union is liable, pursuant to 15 U.S.C. § 1681o, for Mr. Baker's actual damages, reasonable attorneys' fees and costs.

**WHEREFORE,** Mr. Baker respectfully requests this Honorable Court enter judgment against Trans Union for:

a.   Mr. Baker's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

**COUNT VII**
**DEFAMATION – FAIR ISAAC**

103.   Mr. Baker adopts and incorporates paragraphs 1 – 75 as if fully stated herein.

104.   Fair Isaac made intentional, false, and defamatory statements about Mr. Baker – that his credit score was "poor" because he had no revolving account history – when Fair Isaac knew this was false as the report it was evaluating clearly showed decades worth of revolving history.

105.   Fair Isaac's statements were published and disseminated to multiple lenders, and potential lenders, of Mr. Baker's, causing him adverse consequences.

106.   Fair Isaac knew these statements would likely harm Mr. Baker.

**WHEREFORE**, Mr. Baker respectfully requests this Honorable Court enter judgment against Fair Isaac for:

a.   Mr. Baker's actual damages;

b.   Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Baker hereby demands a jury trial on all issues so triable.

Respectfully submitted on February 19, 2024, by:

**SERAPH LEGAL, P.A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
BGeiger@seraphlegal.com
2124 W. Kennedy Blvd., Ste. A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**Exhibit List**
A.     Mr. Baker's Experian Disclosure, April 1, 2023, Relevant Excerpts
B.     Mr. Baker's "mortgage" FICO® scores, April 14, 2023
C.     Mr. Baker's FICO® Equifax "Auto Score 10," April 14, 2023
D.     Mr. Baker's FICO® Equifax "Auto Score 9," April 14, 2023
E.     GM Financial Adverse Action Letter, July 30, 2023