IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT BAKER III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 8:24-CV-00434 |
| | ) |
| EQUIFAX INFORMATION SERVICES, LLC, et al. | ) |
| | ) |
| Defendants. | ) |

### FICO'S MOTION TO DISMISS AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Fair Isaac Corporation ("FICO") moves to dismiss Plaintiff Robert Baker III's ("Plaintiff") claims against FICO (ECF No. 42, Counts 7 and 8) and states as follows:

### INTRODUCTION

Plaintiff's unprecedented attempt to hold FICO liable is based on spurious claims that should be dismissed by the Court.

In his initial Complaint, Plaintiff brought a defamation claim against FICO, alleging that credit reports created by FICO's co-Defendants (each a consumer reporting agency, or "CRA") using software licensed from FICO were inaccurate because they did not include information about two revolving credit accounts on which he is an authorized user, which purportedly caused auto lenders to deny him loans. *See generally* ECF No. 1. Facing a Motion to Dismiss (*see* ECF No. 36), Plaintiff filed an Amended Complaint, reasserting his meritless defamation claim and adding a

negligence count against FICO. Plaintiff now admits the credit reports *did*, in fact, include his revolving credit accounts. *See generally* ECF No. 42, *spec*. ¶¶ 51, 62, and 76. He just thinks, based on his unfounded (and incorrect) assumptions about FICO's software and the auto lenders' practices, that the information concerning his revolving credit accounts should have been presented differently.

Plaintiff's allegations, however, are not legally actionable. *First*, Plaintiff lacks standing because his alleged injuries are not fairly traceable to FICO, which licenses software to the co-Defendants, into which those CRAs input *their* data to generate credit scores (i.e., "FICO® Scores") about individual consumers. FICO is no more responsible for what the credit reports say than Microsoft is responsible for the words in this Motion.

*Second*, Plaintiff cannot state a claim for either defamation or negligence as a matter of law. As to defamation, Plaintiff has not plausibly alleged FICO published false information that caused him actual damages since FICO does not "publish" credit scores and the credit reports created by the CRA co-Defendants were not false. Further, Plaintiff speculates that he would have been approved for an auto loan despite other factors negatively impacting his credit, rendering his claim implausible. As to negligence, Plaintiff has not plausibly alleged FICO owed him a legal duty for the economic and emotional distress damages he seeks to recover, requiring dismissal.

Accordingly, the Court should dismiss Counts 7 and 8 against FICO.

## FACTUAL ALLEGATIONS[1]

Plaintiff's central complaint is that he was allegedly unable to get financing for an auto loan in 2023 after roughly 35 attempts with various auto lenders. ECF No. 42 at ¶¶ 80, 103. Plaintiff was denied financing, he claims, because of information in his credit reports—which he acknowledges were *sold to auto lenders by co-Defendants Experian, Equifax, and Trans Union*—suggesting that he "lacked revolving credit information."[2] *Id.* at ¶¶ 46–50, 57–64, and 68–79. Plaintiff claims such statements were inaccurate or materially misleading because he is purportedly an authorized user on two revolving credit accounts (an American Express and a Lowe's account), as shown in his credit reports. *See generally*, *id.* Despite suggesting the credit reports were inaccurate or misleading, Plaintiff admits that each of the credit reports that the CRA co-defendants sold to the auto lenders included information about his two authorized user revolving credit accounts. *Id.* at ¶¶ 51, 62, and 76.

Based on these allegations, Plaintiff has asserted FCRA-based claims against each of the CRA co-Defendants. ECF No. 42, ¶¶ 106–32. But, in apparent recognition that FICO is not a CRA subject to the FCRA, none of the FCRA-based claims are asserted against FICO.

---

[1] For purposes of this motion, factual, non-conclusory allegations in the Amended Complaint must be regarded as true; conclusory allegations, however, need not be accepted as truth or fact. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262–63 (11th Cir. 2004).

[2] The documents attached to Plaintiff's complaint show other key factors also negatively affected his credit reports, such as "Collection and/or PR" and "loan balances." ECF Nos. 42-3, 42-4, and 42-5. Plaintiff does not contest that these other key factors were accurate.

As to FICO, Plaintiff contends the credit scores included in the credit reports that the CRA co-Defendants sold the auto lenders were lower because FICO allegedly does not consider authorized user tradelines when calculating FICO® Scores using the Automotive Score 9 and 10 scoring models.[3] *Id.* at ¶¶ 49, 60, 70, 74, and 84. On this basis, Plaintiff has asserted two claims against FICO: a defamation claim, *id.* at ¶¶ 133–38; and a negligence claim, *id.* at ¶¶ 139–49.

Tellingly, Plaintiff acknowledges the credit reports at issue were assembled and sold to auto lenders *by the CRA co-Defendants*. *Id.* at ¶¶ 21, 46–48, 58–59, 68–70, and 72–73. Nevertheless, Plaintiff would have the Court hold *FICO* responsible for purportedly suggesting in those reports that Plaintiff lacked any revolving credit history. Because Plaintiff cannot plausibly allege FICO published information to the auto lenders, the Amended Complaint instead attempts to allege that FICO somehow published the information to the CRAs, which then republished the information to the auto lenders. *Id.* at ¶ 135.

At best, Plaintiff is demonstrably mistaken about FICO's role in the credit scoring process. As was recently held in an opinion from the Federal District Court of Utah granting summary judgment in FICO's favor, FICO licenses software that can be used to generate credit scores, but FICO itself does not operate that software, maintain the data that gets input into the software to generate credit score outputs, or

---

[3] Plaintiff does not allege how he came to have firsthand knowledge of what FICO considers in its scoring models. To the contrary, he alleges that such information is not disclosed or otherwise made public. *Id.* at ¶ 85.

distribute the credit score outputs to lenders. *See Gundersen v. Equifax Info. Servs., LLC*, No. 1:22-CV-52, 683 F.Supp.3d 1270, 1272 (D. Utah 2023) ("FICO does not have any role in the generation of any individual consumer's FICO Score … FICO is neither aware nor involved in the transaction.") (citation omitted). FICO has no contemporaneous awareness of when an end user, like an auto lender, requests a FICO® score from a CRA. *Id.* And, "when [the CRA] enters consumer credit information into software it has licensed from FICO and generates a FICO score, the [CRA]—not FICO—is the person that assembles and evaluates consumer credit information." *Id.* at 1273.

## ARGUMENT

The Court should dismiss Counts 7 and 8 of the Amended Complaint. *First*, Plaintiff lacks standing to sue FICO because his alleged injury is not fairly traceable to FICO. *Second*, Plaintiff cannot state a claim for either defamation or negligence against FICO as a matter of law.

### I. Plaintiff lacks Article III standing to sue FICO.

A motion challenging jurisdiction under Rule 12(b)(1) may either (1) attack the complaint on its face, or (2) attack the "existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Because a factual attack challenges a court's "power to hear the case," a court "is free to weigh the evidence and satisfy itself as to the existence of [subject matter jurisdiction]. … [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Id.* at 1529

5

(quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In evaluating a jurisdictional challenge, the court may consider "matters outside the pleadings, such as testimony and affidavits." *Id*. (citation omitted); *see also State Farm Auto. Ins. Co. v. At Home Auto Glass, LLC,* No. 8:21-CV-239-TPB-AEP, 2021 WL 6118102, at *2 (M.D. Fla. Dec. 27, 2021) (Barber, J.) (same).

The Court should dismiss Plaintiff's claims because he lacks Article III standing. To have standing, a plaintiff must allege an "(1) injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). Even assuming *arguendo* that Plaintiff has alleged a concrete and particularized injury-in-fact—i.e., incorrect information in his credit reports[4]—he cannot satisfy the traceability prong, which requires causation.

To establish causation for purposes of standing, a plaintiff must provide "'a fairly traceable connection between the plaintiff's injury and the complained of conduct of the defendant.'" *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1116 (11th Cir. 2022) (quoting *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005)). Traceability is not satisfied if the injury is "the result of the independent action of some third party." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). While Article III requires no more than *de facto* causality,

---

[4] *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 942–43 (11th Cir. 2021) (holding in FCRA claim that "the false reporting itself was the injury" for purposes of standing).

conclusory allegations alone do not establish traceability. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1126 (11th Cir. 2019) (finding injury to putative class was not fairly traceable because "there are just too many unknowns").

Plaintiff has not adequately alleged—and cannot prove—that his alleged injury of having incorrect or misleading information in his credit report was caused by FICO. FICO is not a CRA and does not maintain consumer report information. *Gundersen*, 683 F.Supp. 3d at 1273. It merely licenses software that CRAs use and into which CRAs input consumer report information to calculate credit scores. *Id.* FICO has no role in generating individual consumers' credit scores. *Id.* Indeed, Plaintiff acknowledges as much in the Amended Complaint, *see* ECF No. 42 at ¶ 21 (CRAs "input tradeline data *they maintain on the consumer in his or her credit file* into the software") (emphasis added), and neither alleges that FICO assembles and evaluates consumer credit information like the CRA co-Defendants do, nor that FICO was actually furnished with the information he argues was inadequately emphasized in the credit reports that the CRA co-Defendants created and sold to auto lenders. *See id.* at ¶¶ 14, 28.

Put simply, FICO did not generate (or ever receive) the information in Plaintiff's credit reports. As the *Gundersen* court explained in granting judgment in FICO's favor last year:

> FICO can no more reasonably be said to have produced a score generated by a national credit bureau using FICO's software than can Microsoft be said to have written briefs prepared by lawyers using Microsoft Word or to have performed calculations generated by accountants using Microsoft Excel.

7

*Gundersen*, 2023 WL 4677067, at *3.

Accordingly, any allegedly incorrect or misleading information in Plaintiff's credit reports[5] is not fairly traceable to FICO—and Plaintiff's conclusory allegations to the contrary, which lack any factual support, are insufficient on their own to create standing. *Wilding*, 941 F.3d at 1126; *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) (explaining that when analyzing standing, "Only factual allegations, and not legal conclusions, are relevant to our inquiry, and 'mere conclusory statements ... do not suffice.'"). Accordingly, the Court should dismiss Plaintiff's claims against FICO for lack of Article III standing.

## II.  Plaintiff failed to state a plausible claim against FICO.

Plaintiff's claims against FICO must also be dismissed because he cannot state a claim for defamation or negligence as a matter of law. As to defamation, Plaintiff has not—and cannot—plausibly allege FICO published false information that damaged him. As to negligence, Plaintiff fails to plausibly allege FICO owes him a legal duty.

### A. Plaintiff cannot state a claim for defamation.

To state a claim for defamation under Florida law, each of these five elements must be alleged: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public

---

[5] FICO does not concede that the credit reports contain inaccurate or misleading information, as alleged. In fact, FICO has no way of knowing whether the information is accurate since, as argued *supra*, it does not receive consumer information about Plaintiff or know what information was input when generating the credit reports, thus underscoring the fallacy of Plaintiff's claims against FICO.

8

official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

To successfully plead his claims, Plaintiff must allege facts supporting each element; conclusory allegations alone will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (holding "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" is insufficient to state a claim); *see also Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

Plaintiff's defamation claim against FICO fails under Rule 12(b)(6) for three reasons: (1) he fails to plausibly allege FICO published his credit scores, (2) he has not plausibly alleged the credit reports were false, and (3) he fails to plausibly allege actual damages. Each of these three reasons, standing alone, provides independent grounds for dismissal of the defamation claim.

**1. Plaintiff has not plausibly pleaded FICO published his credit reports.**

First and foremost, Plaintiff failed to plausibly allege that FICO published his allegedly defamatory credit reports. Publication, within the context of a defamation claim, requires "communication of the [allegedly defamatory] statement to a third person." *Hoch v. Loren*, 273 So. 3d 56, 57 (Fla. Dist. Ct. App. 2019). But Plaintiff failed to plausibly allege FICO published any statement at all.

A short review of the allegations makes the deficiency glaringly apparent.

- Plaintiff begins by explaining FICO is a "data analytics company" that licenses or sells its technology to CRAs. ECF No. 42 at ¶¶ 17, 20. Plaintiff then alleges co-Defendants—not FICO—"input tradeline data they maintain on the consumer … into the software provided by Fair Isaac, which generates the consumer's FICO® score." *Id.* at ¶ 21.

- Plaintiff alleges co-Defendants—not FICO—"regularly engage, in whole or in part, in the practice of assembling or evaluating consumer credit information, or other information on consumers, for the purpose of furnishing consumer reports to third parties." *Id.* at ¶ 14.

- Plaintiff alleges "American Express has furnished information regarding [his] account to [co-Defendants]"; he does not allege the information is furnished to FICO. *Id.* at ¶ 28. Plaintiff also does not allege the information about his second account—a Lowe's card issued by Synchrony—is furnished to FICO.

- Plaintiff explains that co-Defendants use FICO's software and various models to calculate his credit scores, with varying results. *Id.* at ¶¶ 36–44.[6]

---

[6] It is worth noting that Plaintiff explicitly acknowledges that there are multiple scoring models offered by FICO, including "industry specific" models. ECF No. 42 at ¶ 19. Implicit in this acknowledgement is the notion that the various scoring models will weigh information differently to give the end-user lenders information most relevant to that industry. In other words, different scoring models produce different FICO® Scores. So Plaintiff's complaint that his credit score using the automotive scoring models is lower than his credit score under a different model is not reflective of a defect in FICO's software. To the contrary, that his credit score is different *is the point* of the industry-specific scoring models, which are tailored to the end users who request that scoring model be used.

- Plaintiff then alleges co-Defendants sold credit reports with inaccurate or misleading information to auto lenders. *Id.* at ¶¶ 46–53, 56–79.

In sum, Plaintiff's Amended Complaint acknowledges *FICO* licensed software to the CRA co-Defendants, but then alleges that *the CRA co-Defendants* used that software to generate Plaintiff's credit scores, which *the CRA co-Defendants* then incorporated into credit reports that *the CRA co-Defendants* sold to certain auto lenders—reports which Plaintiff contends included false or materially misleading information about his revolving credit accounts.

When it comes to FICO's supposed involvement in the creation, sale, and distribution of the allegedly defamatory credit reports, Plaintiff's Amended Complaint is bereft of substantive allegations. Plaintiff does not even assert that FICO was ever furnished the essential information about Plaintiff's revolving accounts such that FICO could input information into its software to generate a credit score.

Despite the above, the Amended Complaint makes the conclusory allegations that *FICO* made defamatory statements that Plaintiff's "credit score was 'poor'" and "published and disseminated" those statements to the CRA co-Defendants. *Id.* at ¶¶ 134–35. But this is contradicted by Plaintiff's very own factual allegations that the CRA co-Defendants, *themselves*, generated outputs by inputting *their* data into the software they had licensed, without FICO's knowledge, participation, or awareness. *Id.* at ¶¶ 20–21, 23, 48, 59, and 73.

11

FICO can no more be said to have published a statement about Plaintiff than Microsoft can be said to publish a statement every time an accountant uses a formula in Microsoft Excel. *See Gundersen*, 683 F. Supp. 3d at 1273. Plaintiff's conclusory allegations that FICO published defamatory statements, thus, are facially implausible. Such unsupported, inconsistent contentions cannot stave off dismissal under Rule 12(b)(6) and require dismissal of the defamation claim brought against FICO.

### 2. Plaintiff has not plausibly alleged credit reports were false.

In addition to failing to plausibly allege that FICO published statements about him, Plaintiff also fails to plausibly allege that his credit reports—which are to be construed in their totality—were false. *Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 717 (11th Cir. 1985) (holding that when considering a defamation claim, "the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication"). "True statements … are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

As noted above, Plaintiff broadly contends that his credit reports were false or materially misleading as it pertains to his revolving credit accounts. *See* ECF No. 42 at ¶¶ 71, 79. Yet Plaintiff admits that those same credit reports—created by the CRA co-Defendants—actually included his revolving accounts authorized user tradelines. *Id.* at ¶¶ 51, 62, 76. There should be no dispute, then, that the credit reports truly and accurately provided information about his revolving accounts, conclusory allegations in the Amended Complaint notwithstanding.

In an effort to nevertheless prop up his defamation claim, Plaintiff relies on implausible, conclusory contentions that the reports were misleading because auto lenders who purchased the reports ignored the authorized user tradelines information present therein and, instead, relied solely on his FICO® Score and the accompanying key factors to deny him loans. *Id.* at ¶¶ 55, 65–66, 86. But Plaintiff offers no factual basis for his knowledge of what the auto lenders did, rendering the allegation conclusory and insufficient.

Plaintiff makes similarly conclusory allegations about FICO's proprietary scoring models—i.e., that the models do not consider authorized user tradelines, *id.* at ¶¶ 84–85; and that a "lack of recent revolving account" means absolutely no revolving accounts of any kind, *id.* at ¶¶ 89–90—to imply FICO's software misled the auto lenders. Here, too, though, Plaintiff makes no factual allegations about how he possesses any knowledge about FICO's scoring models and what the key factors indicate. To the contrary, Plaintiff alleges FICO "does not disclose or otherwise make public" what information its scoring models consider, rendering his allegations about what those scoring models consider contradictory, conclusory, and, thus, facially implausible. *Id.* at ¶ 85. Plaintiff's threadbare, conclusory statements simply "do not suffice" as a matter of law. *Iqbal*, 556 U.S. at 678.

In sum, Plaintiff has conceded that information about his two revolving accounts was included in the credit reports sold to the auto lenders, meaning the credit reports did not falsely state he had no revolving accounts. Plaintiff offers only conclusory allegations that FICO's scoring models did not consider those revolving

accounts when the CRAs generated his credit scores and that the auto lenders did not consider his entire credit report. Because those conclusory allegations need not be considered and do not plausibly allege his credit reports were false, *Jackson*, 372 F.3d at 1262, the Court should dismiss Plaintiff's defamation claim.

### 3. Plaintiff has not plausibly alleged actual damages as to FICO.

Finally, Plaintiff's defamation claim should be dismissed because Plaintiff also has not plausibly alleged that he suffered actual damages. Embedded within the actual damages element of a defamation claim is a proximate cause requirement. *Cape Publications, Inc. v. Reakes*, 840 So. 2d 277, 281 (Fla. Dist. Ct. App. 2003) ("In order to recover for defamation, a plaintiff must show that the damages were proximately caused by the defamatory statements.").

Plaintiff's claim can be distilled to a single point: the auto lenders would have approved him for loans had they known about his revolving accounts. This is implausible for at least two reasons: (1) the auto lenders were provided information about his revolving accounts and (2) it is pure speculation that Plaintiff would have been given an auto loan given the other factors negatively affecting his credit.

First, Plaintiff's claim rests on the premise that he was denied loans because the auto lenders were not provided information about his revolving accounts. This premise is proven false by his own allegations: Plaintiff admits the auto lenders were notified of his revolving accounts, because the information was contained in the credit reports. ECF No. 42 at ¶¶ 51, 62, 76. The fact the auto lenders had the information that he

claims would have caused them to approve him for loans renders his claim facially implausible.

Second, Plaintiff's belief that the auto lenders would have approved him for loans if the revolving account information was presented differently in the credit reports—with some sort of disclaimer—is pure conjecture and need not be accepted as true. *Paramount Transportation Logistics Servs., LLC v. Traffic Tech, Inc.*, No. 2:21-CV-831-JES-NPM, 2022 WL 861584, at *1 (M.D. Fla. Mar. 23, 2022) ("To survive dismissal, the factual allegations must be 'plausible' and 'must be enough to raise a right to relief above the speculative level.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

Plaintiff acknowledges in his Amended Complaint that the allegedly misleading information about revolving accounts was not the only factor hurting his credit scores. ECF No. 42 at ¶¶ 39, 42–44. Indeed, the allegedly false information was not even the primary key factor for his credit scores being classified as "Poor" or "Fair." *Id*; *see also*, ECF Nos. 42-3 and 42-4. Similarly, the letter from GM Financial denying Plaintiff a car loan explained that the primary factor driving the denial was not the lack of revolving accounts, but "Derogatory public record or collection filed." ECF No. 42-5. Plaintiff does not allege that these other factors are inaccurate and, thus, cannot plausibly allege that but-for the purportedly defamatory information concerning his revolving credit history being included in his credit reports he would have secured an auto loan.

At base, Plaintiff's claim that he was only denied auto loans because of the "lack of revolving account" key factor is pure conjecture. Such speculation is not only unsupported, but also implausible given that the credit reports showed both his revolving accounts and identified other negative factors to drive the lenders' decisions not to offer Plaintiff financing. For this reason, too, the defamation claim should be dismissed.

### B. Plaintiff's negligence claim fails because FICO did not owe him a duty.

The Court should dismiss Plaintiff's negligence claim because he has not plausibly alleged FICO owed him a legal duty. To state a negligence claim against FICO under Florida law, Plaintiff must plausibly allege the following elements: "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012).

A tort duty under Florida law can arise from four sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1352–53 (11th Cir. 2023) (quoting *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). "[E]stablishing the existence of a duty under [Florida's] negligence law is a minimum threshold legal requirement that opens the courthouse doors ..., and is ultimately a question of law for the court rather than a jury." *Id.* (quoting *Williams v. Davis,* 974 So.2d 1052, 1057 n. 2 (Fla. 2007)).

In the Amended Complaint, Plaintiff alleges FICO owed him a "duty to act with reasonable care" because he is within a "zone of risk." ECF No. 42 at ¶¶ 144–45. Thus, Plaintiff attempts to invoke "a duty arising from the general facts of the case." *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th at 1353–54. As for damages, Plaintiff seeks two types of damages: (1) economic damages, ECF No. 42 at ¶ 103 (seeking recovery for "time and money" spent); and (2) emotional distress damages, *id.* at ¶¶ 103–04 (seeking recovery for "severe emotional distress" and "severe embarrassment").[7] But because Florida's "zone of risk" doctrine does not impose a duty for the types of damages Plaintiff attempts to recover, the Court should dismiss Plaintiff's negligence claim against FICO.

As to the economic damages Plaintiff seeks to recover, "Florida courts limit the zone-of-risk doctrine to non-economic injuries." *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th at 1354; *see also Virgilio*, 680 F.3d at 1339 ("Where the plaintiff seeks only the recovery of an economic loss, the duty element of negligence law serves as an important barrier to over-extension of liability."). Because the zone-of-risk doctrine does not apply to economic damages, Plaintiff has not sufficiently alleged FICO owed him a duty with regard to the "time and money" he spent and for which he seeks to recover under a negligence theory.

---

[7] Based on the damages Plaintiff seeks, his negligence claim is more akin to a negligent infliction of emotional distress claim. But Plaintiff has not sufficiently alleged the elements of an NIED claim. *LeGrande v. Emmanuel*, 889 So. 2d 991, 995 (Fla. Dist. Ct. App. 2004) (explaining elements of NIED claim are: "(1) the plaintiff must suffer a discernable physical injury; (2) the physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person."). So to the extent the claim is construed as such, it should also be dismissed.

As to the emotional distress damages, "[e]ven when all of the elements of a negligence claim are established, a plaintiff's recovery for emotional harm is limited by Florida's impact rule." *Lincoln v. Fla. Gas Transmission Co. LLC*, 608 F. App'x 721, 723 (11th Cir. 2015) (citing *R.J. v. Humana of Fla., Inc.,* 652 So.2d 360, 362 (Fla. 1995)). "The impact rule is the rule of law followed in Florida applicable to cases in which the plaintiff claims mental or emotional damages but *has not sustained any physical impact or contact,* unless the claim falls within one of the recognized exceptions to the rule." *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007); *see also Lincoln*, 608 F. App'x at 723 (same).

Plaintiff alleges the denial of loans from the auto lenders caused him severe emotional distress and embarrassment, but he does not allege he suffered any physical impact. Nor does Plaintiff allege facts supporting any recognized exception to the impact rule that would permit him to recover for his purely emotional distress damages. As such, Plaintiff has not plausibly alleged "any facts giving rise to a duty on the part of [FICO] to protect him from mental and emotional harm" for which he seeks to hold FICO liable. *Lincoln*, 608 F. App'x at 723.

In sum, Plaintiff has not plausibly alleged FICO owed him a legal duty. The zone-of-risk doctrine does not impose a duty with regard to economic damages, and Florida's impact rule precludes the existence of a duty for solely emotional distress damages. Accordingly, the Court should dismiss Plaintiff's negligence claim.

## CONCLUSION

The Court should dismiss Plaintiff's defamation and negligence claims against FICO. Plaintiff lacks standing as no injuries are fairly traceable to FICO—which merely created a software program used by the CRA co-Defendants to create credit scores at the request of the end users. Moreover, Plaintiff cannot state a claim for either defamation or negligence. Rather, Plaintiff's claims are based on speculation and never-before-recognized legal theories that are unsupported by existing law.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel certifies that they conferred with counsel for Plaintiff regarding this motion on May 9, 2024, via email. Plaintiff opposes the motion in all respects.

Respectfully submitted,

*/s/ Jacob Hanson*
Lauren G. Raines, Esq. (FBN 11896)
Jacob Hanson (FBN 91453)
Bradley Arant Boult Cummings LLP
Thousand & One
1001 Water Street, Suite 1000
Tampa, FL 33602
T: (813) 559-5500 | F: (813) 229-5946
Primary email: lraines@bradley.com
Primary email: jhanson@bradley.com
Secondary email: tabennett@bradley.com
**Counsel for FICO**

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2024, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to counsel of record.

*/s/ Jacob Hanson*
Counsel for FICO